Breckenridge v. Neill.

26  101
78  217

GEORGE W. BRECKENRIDGE v. JOHN NEILL AND ANOTHER.
JOHN NEILL v. H. C. FOUNTAIN.

Where a person employed to make a location of land for another wrongfully refuses to return the original field notes to the General Land Office, or to deliver the same to his employer, the owner of the survey, whereby the owner is disabled from returning them to the General Land Office as required by law: *Held*, that the owner of the survey might proceed in like manner as though the field notes were literally lost, and upon affidavit of the facts might obtain from the office of the district surveyor a certified copy of the field notes, upon the return of which to the General Land Office within the time limited by law he would be entitled to his patent by virtue of the Act of May 9th, 1846. (O. & W. Dig., Art. 1,199.)

The object of the act above referred to, authorizing the substitution of certified copies of field notes when the originals have been lost or destroyed, was manifestly to enable the owner of the survey, who, from a cause beyond his control, was unable to return the original field notes in time to prevent the loss of his right, to avoid that consequence by obtaining a certified copy, which, if returned to the Land Office within the prescribed time, should supply the place of the originals.

It was not the policy of that law to work a forfeiture of rights, but to require parties to proceed with all reasonable diligence to the completion and perfection of their rights, and at the same time to provide the means by which they might avoid irreparable injury and loss from unavoidable casualties.

The case therefore already stated, where the original field notes are wrongfully detained from the owner, is within the purview of the act, and his affidavit of the facts is a substantial compliance with its requirements, and entitles him to its relief.

When the hired locator had returned the original field notes to the district surveyor's office, and had them recorded, the election of the owner of the certificates as to their location was thereby determined, and thenceforth the field notes became his property and subject to his control; and the subsequent withdrawal of the field notes by the locator from the surveyor's office, and his detention of them for the reason that he had not been paid his compensation for making the location, was wrongful.

But in availing himself of the location so made, the owner of the survey was bound, both by his contract and the principles of equity, to pay the locator the stipulated compensation for his services; and the judgment of the court below, making such compensation a lien upon the land, *held* to be correct.

APPEAL from Bexar. Tried below before the Hon. Thomas J. Devine.

Breckenridge filed his petition in the District Court of Bexar

county for a mandamus to the district surveyor to survey for him certain lands which he alleged had been previously surveyed for Neill, who was therefore made a party defendant, and whose claim to the land was sought to be annulled.

The pleadings and evidence disclosed the facts, that on the 1st of January, 1855, Neill, by his agent, Fountain, filed with the district surveyor two certificates calling for two leagues and one labor of land, designating certain vacant land for their location, the survey of which was accordingly made for Neill on the 3d day of March, 1855. Fountain had been employed by Neill to make the locations, at the compensation of ten cents per acre; and did make them, having the field notes duly recorded in the surveyor's office. But Neill failing to pay Fountain his compensation, the latter withdrew the original field notes from the surveyor's office, and refused either to return them to the General Land Office or to deliver them to Neill. So the matter stood until near the expiration of the twelve months allowed by law for the return of the field notes to the General Land Office, when, on the 28th of February, 1856, Neill filed with the district surveyor his affidavit that the original field notes were "forcibly detained" by Fountain, and thereon obtained certified copies, which he returned to the General Land Office before the expiration of twelve months from the date of the survey.

On the 4th day of March, 1856, immediately after the expiration of the twelve months from the date of Neill's survey, the plaintiff, Breckenridge, filed with the district surveyor his certificates, with directions to locate them on the land surveyed for Neill, which the surveyor refused to do, for the reason that Neill still claimed the land. Wherefore, Breckenridge brings this suit to compel the survey for him, and to cancel Neill's claim, alleging that, in consequence of the original field notes of Neill's survey not having been returned to the General Land Office within the twelve months limited by law, the land had become vacant and open to his files; and that Neill's attempt to substitute certified copies was unwarranted by law, void, and in fraud of his, the plaintiff's, rights.

Neill answered, setting out his claim and insisting on its validity,

and charging Breckenridge and Fountain with fraud and collusion in the detention by the latter of the original field notes of the survey, alleging that their object was to defeat his surveys and to open the land as public domain to Breckenridge's locations, for which Breckenridge was to compensate Fountain; wherefore he prayed that Fountain be made a party defendant, and be compelled to produce his, Neill's, obligation to him, for cancellation.

Fountain, thus becoming a party to the litigation, denied the charges of Neill, attempted to vindicate his detention of the field notes on the ground that Neill had refused to pay him for his services as stipulated, and insisted that he was thereby justified in withholding the field notes; and prayed, in case Neill's claim to the land was sustained, that he might have judgment against him for his compensation.

Breckenridge amended and also denied Neill's charges of collusion with Fountain, and prayed that Neill's patents, obtained since the commencement of the suit upon the substituted copies of the field notes, might be canceled.

There was verdict and judgment for Neill against Breckenridge for the land, and for Fountain against Neill for $1,085, his compensation for making the locations, which was adjudged to be a lien on the land till paid. Breckenridge appealed against the general judgment, and Neill also assigned errors to the judgment against him in favor of Fountain.

*Dennison & Henson, Wilcox & Leigh*, for Breckenridge. 'That the court erred in refusing to grant a new trial is evident from the statement of facts.

1st. The affidavit of Neill, on the 28th of February, 1856, to obtain certified copies of the field notes, is not in compliance with the statute, in this, that it does not state that the original field notes " are lost or accidentally destroyed," but simply that they are " forcibly detained in the possession of one Fountain, who refuses to deliver them to affiant," and is therefore void. (Hartley's Dig., art. 2,170.)

2d. The affidavit was not true in fact, as will appear from the testimony of Odin and Schleicher and the contract between Foun-

tain and Neill.  Fountain withheld the field notes and certificates to secure the payment of the locating and surveying fees, and not forcibly, as stated in the affidavit.  It was in the power of Neill at any time to have obtained them by paying the amount stipulated in the written contract, or by giving a part of the land, as was the understanding in the verbal contract.  The affidavit was therefore false, and a fraud upon the State and all the parties.

*I. A. & G. W. Paschal,* for Neill.  As to the assignment of errors against Fountain, his recovery ought to have been defeated in equity.  The very fact that he had a lien upon the lands for his services should have prevented him from putting Neill to so much expense and trouble.  His cause was unjust, and the jury ought to have given heavy damages against him.  His failure to return the field notes for the paltry excuse given ought to defeat his recovery altogether.  In truth, his conduct was a willful abandonment of his contract.

WHEELER, C. J.  The refusal of the surveyor, Fountain, to deliver to Neill the field notes, put it out of his power to return them to the Land Office within the time prescribed by law.  (O. & W. Dig., art. 1,207.)  As a substitute for the originals, Neill obtained from the district surveyor certified copies from the records of his office, which he returned to the Land Office in time, and was thus enabled to obtain his patents.  (Id., 1,199.)  But it is insisted that he did not comply with the statute providing for the substitution of copies for the original field notes; that the affidavit upon which he obtained the copies was not in conformity to the statute; that the originals not having been returned to the Land Office, the land became vacant, and subject to the plaintiff's location on the 4th of March, 1856; and the patents issued to Neill are to be deemed to have been obtained contrary to law and in fraud of the plaintiff's right, and are consequently void.

The affidavit, it is true, is not a literal compliance with the statute.  (O. & W. Dig., art. 1,199.)  But was it not a substantial compliance?  Did it not meet the obvious purpose and object which the Legislature had in view?  That manifestly was to enable the

owner of a survey, who was unable, from a cause beyond his control, to return the original field notes in time to prevent the loss of his right, to avoid that consequence by obtaining a certified copy, which, if returned to the Land Office within the prescribed time, should supply the place of the originals. It was not the policy of the law to work a forfeiture of rights; but to require parties, with all reasonable diligence, to proceed to the completion and perfection of their right, and at the same time to provide the means to enable them to avoid irreparable injury and loss from unavoidable casualties. Hence, when the original field notes were lost or destroyed, so that they could not be returned, the law provided that, upon making affidavit of the fact, the party might obtain a certified copy of the record thereof, which should have the same effect in preserving the right of the party and enabling him to obtain his patent, as the original would have had. (Ibid.)

The field notes were not "lost," literally, in the ordinary acceptation of the term; but were they not, so far as the power of the owner to control them was concerned, and within the purview of the statute, considering the mischief it was intended to remedy, to be deemed as lost? They were in the hands of the surveyor who wrongfully withheld and refused to deliver them. The refusal was wrongful, because the surveyor had no right to detain them. He had returned them to the district surveyor's office, and had them recorded. That determined the election of the owner, Neill, and they thenceforth became his property, subject to his control. The withdrawal of them from the surveyor's office by Fountain, and withholding of them from Neill, as effectually prevented him from returning them to the Land Office as if they had been literally "lost or destroyed." He made his affidavit, stating the facts, upon which the surveyor gave him copies from the record. These he returned, with the affidavit he had made to obtain them, to the General Land Office, and they were there deemed by the commissioner to preserve his right, and he thus obtained his patents. There was no fraud practiced by Neill in obtaining them. He simply had stated the facts, and thereupon obtained his patents. We do not think they can be held to have been procured by fraud, or issued against law. If there was not

a literal, we think there was a substantial compliance with the law, and consequently that his right to the land is complete and perfect as against the plaintiff—uniting with his legal title the superior equity.    There is, therefore, no error in the judgment.

Nor is there error in the money judgment rendered by the court in favor of Fountain.   Neill took the benefit of the contract, availed himself of the services of Fountain, and upon every principle is bound to pay for them, as well by the terms of his contract as upon equitable principles.   The judgment is in all things affirmed.

Judgment affirmed.