GEORGE W. HILL v. SAMUEL KERR ET AL.

No. 2911.

1. **Return of Field Notes Withdrawn — Copies.**—The field notes of a survey were withdrawn from the Land Office in 1866. By Act of the Legislature of November 29, 1871, all field notes were required to be returned within twelve months from its passage. *Held,* that a forfeiture was prevented by the return to the Land Office of a duly certified copy of the field notes from the proper surveyor's office.

2. **Evidence— Depositions—Practice.**—That a witness in his answers in giving his depositions appeared to testify partly from books and records before him will not authorize the rejection of other parts of his testimony in which the witness testified directly to a material fact.

3. **Computation of Time.**—When the time within which an act is to be done is to be computed from and after a certain day the rule of construction is to exclude that day. See example.

4. **Headrights Distinguished from Bounty and Donation Warrants.**—Donations and bounty certificates are well known as describing classes of certificates granted for military services. These are distinct from headrights granted to immigrant heads of families.

Appeal from Clay. Tried below before Hon. P. M. Stine.

This was an action of trespass to try title, brought December 16, 1887, in the District Court of Clay County by George W. Hill, appellant, against appellees to recover 2043 acres of land in Clay County, located by virtue of headright certificate No. $\frac{3}{50}$ issued to the heirs of Eliza A. Farris for one league and one labor of land.

The plaintiff relied upon a location and survey under this certificate and owership of it.

The defendants, pleading general denial, relied (1) upon the failure of appellants to show a valid certificate; (2) that the field notes were withdrawn from the Land Office prior to November 29, 1871 (Act Nov. 29, 1871), and were not returned to the Land Office within twelve months from that date as was provided by said act should be done; and (3) that appellees are at all events entitled to hold part of the land.

There was a trial without a jury April 24, 1889, resulting in judgment for the defendants. Hill, the plaintiff, appealed.

*Barrett & Eustis*, for appellant.—1. The court erred in sustaining defendants' objection to and excluding from evidence the certified Land Office copy of the survey dated September 28, 1860, said certified Land Office copy being a copy of the original survey of the land in controversy from the records of the Montague Land District, under the hand of A. L. Shoemaker, district surveyor, which was filed in Land Office November 29, 1872.

Section 3 of the Act of November 29, 1871 (Paschal's Digest, article 7098), has no application to a case like the one in controversy, in which the certificate upon which the survey was made, together with the field notes of the survey, had once been properly deposited in the Land Office prior to the passage of that act, unless subsequent to the deposit and prior to the passage of the act the owner of the certificate had withdrawn the field notes; and even if said act does apply to the present case, the return of a certified copy of the original survey from the proper surveyor's office within the proper time had the same effect as the return of original field notes would have, and a return to the Land Office on November 29, 1872, of the said certified copy was a sufficient compliance with said act, the day of the passage of the act not being counted in the computation of time; and the records of the surveyor's office was notice of the appropriation of the land. Pasch. Dig., art. 7098; Snider v. Methvin, 60 Texas, 499; Pasch. Dig., art. 4552; Evitts v. Roth, 61 Texas, 87; Acts 1866, p. 94.

2. What the records show or do not show can only be proved by the custodian of the records. The testimony of R. M. Hall was excluded by the court, and is in substance that he was Commissioner of the General Land Office; that the Eliza A. Ferris certificate No. $\frac{3}{50}$, together with the field notes of a survey of 14,792,184 square varas made in Clay County by

virtue of said certificate on September 28, 1860, were both filed in the Land Office on October 15, 1860, and that said certificate has remained on file ever since; that said survey was withdrawn October 20, 1866; that a certified copy of said survey from the surveyor's records of Montague County, Texas, was filed in Land Office November 29, 1872, and has been on file ever since; that from 1866 to November 29, 1872, Clay County was a part of Montague Land District; that a corrected survey of 2478 acres was made May 21, 1887, by virtue of said certificate No. $\frac{3}{20}$, and filed in Land Office May 26, 1887; that said corrected survey does not include any land not included in the original survey; that said corrected survey has not been patented because surveys claimed by defendants cover the same land; that said surveys were located October 18, 1872, and are junior locations to the said Eliza A. Farris survey, but that since they have been patented said Eliza A. Farris survey can not be patented until the said junior patents are canceled. The testimony, showing date of filing or return of certificate and surveys to Land Office and what conflict existed between the Farris survey and junior locations, was admissible and should have been admitted. Buford v. Bostick, 50 Texas, 375.

*A. K. Swan*, for appellees.— 1. When field notes of a survey of land not patented were withdrawn from the Land Office prior to the 29th day of November, 1871, and were not returned to said office within one year from that date, such survey was forfeited and of no further validity; and the proof showing this withdrawal, the burden is on the party claiming under such location to show their return in time. And for these reasons the court did not err in finding for appellee. Act Nov. 29, 1871; Pasch. Dig., art. 7076; Johnson v. Eldridge, 49 Texas, 507; Garza v. Cassin, 72 Texas, 440.

2. The court did not err in excluding the Land Office copy of the field notes, because the evidence does not show that said field notes were filed in the Land Office on November 29, 1872, or on any specific date.

3. If the field notes were filed November 29, 1872, that was not in time, and hence the court did not err in any material matter. If all the evidence offered had been admitted and had been sufficient to establish a filing, it was on November 29, 1872.

Appellant in this case relies on the case of Snider v. Methvin, 60 Texas, 499, and Sickels v. Epps, 8 Southwestern Reporter, as authority. The first of these cases is in our favor to the extent that it upholds the validity of the Act of November 29, 1871. Hence we presume that it is cited with a hope that the court may conclude that Mabry had withdrawn the field notes without authority. This view, however, is untenable, for the reason that the record shows that Mabry controlled the location and afterwards obtained a locative interest in this and the other survey, while there is not

the slightest evidence that he was not the agent of the owner of the certificate.

The other case has no application for the reason that the whole transaction arose before the Act of 1871, and was passed upon wholly with reference to an intention to abandon.

4.   Certified copies of documentary evidence on file in the Land Office with endorsement and other matter of record is better evidence than the statements of the Commissioner taken by deposition, and hence no error was committed in excluding the evidence of R. M. Hall.  Rev. Stats., art. 2253; Buford v. Bostick, 50 Texas, 375; Stafford v. King, 30 Texas, 257.

5.   The land certificate offered by appellant was issued without authority of law and in violation of law, and was therefore no evidence of any right.  Appellant offered a specified copy of the special act under which the certificate was issued.  The act was passed February 13, 1858, and provides that "none of the bounty or donation certificates herein mentioned shall issue before September 1, 1858."  The certificate was issued February 19, 1858.  The act offered shows authority to issue but one certificate, which is called a headright—the Farris certificate.  The certificate of the Secretary of State to the copy of the act shows it to be a correct copy of the act, not a correct copy of part of the act.  This evidence was admitted over defendants' objection.

GAINES, ASSOCIATE JUSTICE.—The appellant brought this action in the court below to recover a tract of land located and surveyed upon a certificate granted by virtue of a special act of the Legislature to the heirs of Eliza A. Farris.  The land was originally surveyed in 1860, and the certificate and field notes promptly returned to the General Land Office.

The land has never been patented by virtue of this survey.  The appellees claim under patents issued upon junior locations.  If appellant's location and survey have not been forfeited he has the better title.  The appellees claim that the location was forfeited by a withdrawal from the Land Office of the field notes and a failure to return them within the time prescribed by the Act of November 29, 1871.  Pasch. Dig., art. 7098.

It was proved that the field notes were withdrawn from the Land Office for the purpose of correction in 1866 by one Mabry, who was ostensibly acting for the owner of the certificate.

The plaintiff offered to prove by the deposition of R. M. Hall, Commissioner of the General Land Office, that a copy of the field notes of the survey from the surveyor's office, certified to by the surveyor of Montague Land District (Clay County being then attached to Montague County for judicial and other purposes), was filed in the Land Office on the 29th day of November, 1872.  The testimony, upon objection by defendants, was excluded by the court, and in this we think there was error.  The objections were that the testimony was " vague, indefinite, and purely sec-

ondary and legal conclusions of the witness, there being better evidence of the facts therein contained, to-wit, certified copies of the instruments, field notes, file marks, and endorsements thereon, and because the same does not sufficiently identify the field notes testified about."

As to the fact and date of the return of the field notes we fail to see the force of the objection. It was probably intended to object to the evidence upon the ground that the witness was testifying from the papers and records in the Land Office and not from his personal knowledge. But such does not appear to be the case. He testifies positively to the fact, and in the absence of some evidence showing the source of his information we have no right to assume that he was not present when the certified copy of the field notes was filed. Other portions of his deposition render it probable that he was testifying in part at least from the records and memoranda of his office, but that does not justify the exclusion of so much of his testimony as is a direct and positive statement of a fact as within his own knowledge. His testimony was in reference to a certified copy of the field notes of the Farris survey which were made by the surveyor of Montague Land District and filed in his office. There could be no mistake as to the identity of the instrument about which he testified, as appellee's claim, for in connection with his testimony a copy of this document from the General Land Office, duly certified to by the witness over his official signature and seal as Commissioner, was offered and was also excluded. The exclusion of this certified copy is also assigned as error, and we think the assignment well taken. If Hall's testimony had not been rejected it would have been proved that the copy of the field notes was returned November 29, 1872. This was within the time prescribed by the Act of November 29, 1871, which required all field notes which had been withdrawn from the Land Office to be returned within twelve months from its passage upon penalty of a forfeiture of the location. When the time within which an act is to be done is to be computed from and after a certain day the rule is to exclude that day. Lubbock v. Cook, 49 Texas, 96; O'Connor v. Towns, 1 Texas, 107. It is true the act requires the return of the field notes and does not mention copies. But we are of opinion that a copy from the surveyor's book should be deemed a sufficient compliance with the law.

By the Act of May 9, 1846 (Paschal's Digest, art. 4552), it was provided that when the original field notes had been lost the owner by making an affidavit of the fact before the surveyor should be furnished with a certified copy, which he could return to the Land Office in lieu of the original.

In Breckenridge v. Neill, 26 Texas, 101, this court held that when the field notes of a survey were withheld by the locator a certified copy furnished by the surveyor, upon his affidavit of his inability to procure the original, came within the spirit of the act and was sufficient. The case serves to illustrate the principle that in order to save a forfeiture statutes of the

character of that under consideration will receive a construction most liberal to the party whose rights are affected.

We presume it has been the custom of surveyors ever since they were required to keep a record of their surveys to make out what are called the original field notes and the record about the same time. Doubtless in many if not in most cases the field notes were first written out upon the record book and then copied upon paper for transmission to Land Office. However it may have been done, they were practically contemporaneous and were of equal standing and dignity, and we see no reason why after the field notes were withdrawn from the Land Office a certified copy from the surveyor's record duly returned to the Land Office should not answer every purpose of the original. The act which required the return of the field notes within twelve months should in this particular, as in all others, have that construction best calculated to save the rights of the locators and to prevent forfeitures. O'Connor v. Towns, *supra*.

A copy of the field notes from the office of the surveyor of Clay County was adduced in evidence, and were the same field notes as those shown in the certified copy from the Land Office which was excluded. To hold, therefore, that the copy returned to the Land Office was not equivalent to the original and sufficient would be to forfeit a valuable right upon a technical and literal construction not supported by sound reason.

We find nothing worthy of consideration in appellant's claim of title from a common source. We are unable to perceive how the executory contract between him and Weddington and Newcomb aids him in establishing title in this suit.

In reply to appellant's whole case appellees submitted the counter-proposition that the certificate under which appellant claims was issued without authority of law. The first section of the special act, as shown in the transcript, reads as follows: "Be it enacted by the Legislature of the State of Texas: That the Commissioner of Claims be and he is hereby authorized to issue the following named land certificates; that is to say, * * * to the heirs of Eliza A. Farris, headright, one league and labor." The second provides "that none of the bounty or donation certificates mentioned in this act shall be issued before the first day of September, 1858," and also that "before the issuance of the headright certificates mentioned in this act the parties making application shall in like manner produce satisfactory evidence," etc. The certificate was issued February 19, 1858. The contention is that the grant being a gratuity the certificate was a donation certificate. This proposition can not be maintained. The certified copy of the act, as well as the context, shows that other certificates were granted in addition to the grant to the heirs of Mrs. Farris. Donation and bounty certificates are well known terms under our laws, and have been used to designate classes of certificates granted for military service. These were never for as much as a league

and labor of land. The quantity in this case shows that it was in the nature of a certificate granted to the immigrant head of a family, and in the statute it is mentioned as a headright certificate. It is clear that it was neither a bounty nor a donation certificate within the meaning of the act, and that the Commissioner was authorized to issue the certificate at any time after the law went into effect.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered October 17, 1890.